UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ERIC ZEDONIS,                         :
     Plaintiff                    :
                                         :
     v.                           :   CASE NO. 1:15-CV-1863
                                         :
LORETTA LYNCH, *et al.*,               :
     Defendants                   :

*M E M O R A N D U M*

I.      *Introduction*

         Before this court is Defendants' motion to dismiss (Doc. 8) Plaintiff Eric

Zedonis's complaint (Doc. 1), which asserts an as-applied challenge to the constitutionality

of 18 U.S.C. § 922(g)(1) under the Second Amendment to the United States Constitution.

Plaintiff alleges that, due to a prior conviction in Pennsylvania for driving under the

influence (DUI), § 922(g)(1) prohibits him from possessing a firearm, and he seeks a

declaration that § 922(g)(1), as applied to him, violates the Second Amendment.  (Doc. 1

at 3, 6).  Defendants assert that Plaintiff's complaint fails to state a claim upon which relief

can be granted.  (Doc. 9 at 12).  Defendants argue that the complaint does not implicate

conduct protected by the Second Amendment because Plaintiff's DUI conviction, being

punishable by more than two years' incarceration, presumptively disqualifies him from

exercising his right to bear arms.  (Id.)  Plaintiff maintains that he has alleged sufficient

facts under the Third Circuit's recent decision in Binderup v. U.S. Att'y Gen., 836 F.3d 336

(3d Cir. 2016) (en banc), petition for cert. filed, 83 U.S.L.W. 947 (U.S. Jan. 5, 2017) (No.

16-847), to rebut the presumption that he is disqualified from possessing a firearm.  (Doc.

16 at 9-12).  No court in this district has yet applied <u>Binderup</u> or its standards for maintaining an as-applied Second Amendment challenge to § 922(g)(1).  For the reasons that follow, we will deny Defendants' motion to dismiss.

*II.*        *Background*

Federal law generally prohibits persons from possessing a firearm if they have been convicted in any court of "a crime punishable by imprisonment for a term exceeding one year."  18 U.S.C. § 922(g)(1).  Individuals are excluded from this ban if they have been convicted of "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less."  <u>Id.</u> § 921(a)(20)(B).  Together, these statutes prohibit individuals from possessing firearms if they are convicted of State misdemeanors punishable by more than two years' imprisonment.  <u>See</u> <u>Binderup</u>, 836 F.3d at 342.

On September 28, 2015, Plaintiff filed a complaint in this court against Defendants, the Attorney General of the United States and the Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives.  (Doc. 1 at 1-2).  The complaint alleges that Plaintiff was convicted in Dauphin County, Pennsylvania on January 12, 2005, of one count of DUI—highest rate of alcohol content, second offense ( "DUI conviction"). (Doc. 1 at 3); <u>see</u> 75 PA. CONS. STAT. § 3802(C) (classifying individuals with 0.16% or greater alcohol concentration within two hours of driving as "highest rate").  The criminal complaint forming the basis for the DUI conviction alleges that on August 21, 2004, at about 2:30 a.m., Plaintiff failed to stop a vehicle at a stop line while approaching a red light.  (Doc. 9-2 at 3).  After being stopped by police, Plaintiff allegedly admitted to drinking and submitted to a blood test that revealed a blood alcohol content (BAC) of .302%.  (<u>Id.</u>)

Plaintiff pleaded guilty to the 2005 DUI charge, and was sentenced to three to six months' confinement, sixty months' Intermediate Punishment, and 500 hours of community service.  (Doc. 1 at 3); (Doc. 9-1 at 6).

Plaintiff asserts that his 2005 DUI conviction was his second DUI offense, and was labeled a first degree misdemeanor under Pennsylvania law.  (Doc. 1 at 3); see 75 PA. CONS. STAT. § 3803(b)(4).  Such an offense is punishable by an imprisonment term of up to five years.  (Doc. 1 at 3); 18 PA. CONS. STAT. § 1104(1).  Because his 2005 DUI conviction was allegedly punishable by more than two years' imprisonment, Plaintiff asserts that he is prohibited under § 922(g)(1) from possessing a firearm.  (Doc. 1 at 3). Plaintiff maintains that he has not been arrested or convicted for a misdemeanor or felony since his 2005 DUI conviction, and he desires to purchase and possess a firearm for self-defense, but is allegedly unable to do so out of fear of Defendants' enforcement of § 922(g)(1).  (Id. at 5).  He contends that he is a responsible, law-abiding citizen, and does not have a history of violent behavior or conduct that would suggest that he would pose any more danger possessing firearms than the average, law-abiding citizen.  (Id.)  Given the nature of, and passage of time since, his 2005 DUI conviction, Plaintiff seeks a declaration that § 922(g)(1) is unconstitutional, as applied to him, under the Second Amendment.  (Id. at 5-6).

On December 4, 2015, Defendants filed the instant motion to dismiss Plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  (Doc. 8).  On September 26, 2016, this court ordered further briefing from the parties on the application of the Third Circuit's recent decision in Binderup.  (Doc. 15).  The motion is now ripe for disposition.

III.        *Discussion*

    A.        Motion to Dismiss Standard

As a preliminary matter, we note the standard governing Defendants' motion and evaluate which exhibits we may consider in deciding it. "In considering a Rule 12(b)(6) motion, courts must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Bruni v. City of Pittsburgh, 824 F.3d 353, 360 (3d Cir. 2016) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "While 'accept[ing] all of the complaint's well-pleaded facts as true,' the district court 'may disregard any legal conclusions.'" Id. (quoting Fowler, 578 F.3d at 210-11). "[D]istrict courts are bound not to 'go beyond the facts alleged in the Complaint and the documents on which the claims made therein [are] based.'" Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1425 (3d Cir. 1997)). Courts may, however, "consider matters of public record, exhibits attached to the complaint, and undisputedly authentic documents attached to a motion to dismiss." Delaware Nation v. Pennsylvania, 446 F.3d 410, 413 (3d Cir. 2006); In re Rockefeller Center Properties, Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under [Federal Rule of Civil Procedure] 56." FED. R. CIV. P. 12(d).

Defendants ask this court to consider several exhibits attached to their motion, including a police criminal complaint, affidavit of probable cause, and four docket sheets relating to Plaintiff's 2005 DUI conviction and several subsequent magisterial court proceedings against Plaintiff. (Docs. 9-1 to 9-5). The exhibits establish the underlying

allegations of Plaintiff's 2005 DUI conviction, *i.e.*, he was alleged to have a BAC of .302%

when charged, and show that Plaintiff pleaded guilty to several summary offenses since

his 2005 DUI conviction, including failure to file a local income tax return in November

2009, and public drunkenness in August 2013. (Docs 9-2 at 2-4, 9-3 at 2; 9-4 at 2).

Plaintiff objects to our consideration of the exhibits. (Doc. 10 at 5 n.1). Defendants

counter that the exhibits are matters of public record upon which this court may rely, and

request that we consider the exhibits at this stage; alternatively, if our consideration were

to result in converting their motion to one for summary judgment, Defendants ask that we

decline to consider the exhibits. (Doc. 9 at 9, 11 n.7).

We find that we may rely on these documents for a limited purpose without

construing Defendants' motion to dismiss as one for summary judgment. First, judicial

opinions and docket sheets are public records, of which this court may take judicial notice

in deciding a motion to dismiss. See Pension Benefit Guar. Corp. v. White Consol. Indus.,

Inc., 998 F.2d 1192, 1197 (3d Cir. 1993) (defining public record to include, *inter alia*,

criminal case dispositions, such as convictions or mistrials); Dean v. Copozza, No. CIV.A.

13-41, 2013 WL 1787804, at *1 (W.D. Pa. Apr. 10, 2013) ("Pennsylvania's Unified Judicial

System provides online access to the docket sheet for criminal cases, and this court may

take judicial notice of those dockets."). Relying on the docket sheets appended to

Defendants' motion, we accept, for purposes of this motion, both the complaint's

allegations that Plaintiff has not been convicted of any misdemeanors or felonies since his

2005 DUI conviction, and the exhibits showing that he has pleaded guilty to more recent

summary offenses. (Docs. 1 at 3, 9-3, 9-4).

Further, because the police criminal complaint and affidavit of probable cause (Doc. 9-2) outlining Plaintiff's 2005 DUI conviction are indisputably authentic documents upon which Plaintiff's complaint is based, we may consider these exhibits for a limited purpose. See Boyden v. Twp. of Upper Darby, 5 F. Supp. 3d 731, 734 (E.D. Pa. 2014) (relying on police criminal complaint and affidavit of probable cause in deciding motion to dismiss); Stasko v. Lebanon Cty. Drug Task Force, No. 1:12-CV-1156, 2012 WL 6561726, at *1 (M.D. Pa. Dec. 17, 2012) (same); Scheller v. Point Twp., No. 4:CV-13-0890, 2013 WL 8374681, at *4 (M.D. Pa. Nov. 4, 2013), report and recommendation adopted as modified, No. 4:13-CV-890, 2014 WL 1846648, at *2 n.2 (M.D. Pa. May 6, 2014) (same); Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 780–81 (W.D. Pa. 2000), aff'd, 276 F.3d 579 (3d Cir. 2001) ("[A] plaintiff's failure to attach or cite documents explicitly relied on or integral to the complaint does not preclude the court, when considering a motion to dismiss, from reviewing the text of these extrinsic documents.").[1] However, we rely on these exhibits only to establish the allegations of Plaintiff's 2005 DUI conviction, *i.e.*, he was alleged to have had a BAC of .302%; we do not accept the allegations as true.

B.       § 922(g)(1) Bars Plaintiff From Possessing A Firearm

Having resolved which documents we may rely on in deciding Defendants' motion to dismiss, we turn to the motion's merits, and whether the factual allegations in Plaintiff's complaint are sufficient to assert an as-applied challenge to the constitutionality of § 922(g)(1). We first evaluate the complaint's allegation that Plaintiff is prohibited from

---

[1] But see Hadesty v. Rush Twp. Police Dep't, No. CV 3:14-2319, 2016 WL 1039063, at *4 (M.D. Pa. Mar. 15, 2016) (holding criminal complaint may not be considered, and distinguishing Shelley v. Wilson, 339 F. App'x 136 (3d Cir. 2009) (finding police incident report and a criminal complaint "were matters of public record, and/or were integral to the false arrest claim")); Morozin v. Johnson, No. CIV.A. 11-2653, 2011 WL 5837146, at *3 (E.D. Pa. Nov. 18, 2011).

possessing a firearm under § 922(g)(1) due to his prior DUI conviction (Doc. 1 at 3), for if the statute does not plausibly apply to Plaintiff, his constitutional arguments would fail to state a claim.  See Dutton v. Pennsylvania, No. CIV.A. 11-7285, 2012 WL 3020651, at *2 (E.D. Pa. July 23, 2012), aff'd, 503 F. App'x 125 (3d Cir. 2012) (noting, in deciding motion to dismiss, "the Court must determine whether [plaintiff's] previous convictions preclude him from obtaining a firearms permit under 18 U.S.C. § 922(g)(1)[.]").

Here, the parties do not dispute the complaint's assertion that Plaintiff is prohibited from possessing a firearm under § 922(g)(1) due to his 2005 DUI conviction. (Docs. 10 at 3-4; 16 at 8).  The complaint alleges that Plaintiff's second-time DUI conviction with the highest rate of BAC is punishable by a term of imprisonment of up to five years in Pennsylvania.  (Doc. 1 at 3 (citing 75 PA. CONS. STAT. § 3803(b)(4); 18 PA. CONS. STAT. § 1104(1))).  We agree that this allegation, taken as true for purposes of this motion, adequately alleges that Plaintiff is prohibited from possessing a firearm under § 922(g)(1) because his DUI conviction was "punishable by more than two years' imprisonment" and he "cannot seek refuge in § 921(a)(20)(B) and [is] subject to the bar of § 922(g)(1)."  Binderup, 836 F.3d at 342.  Because the complaint sufficiently alleges that § 922(g)(1) bars Plaintiff from possessing a firearm, and noting that there does not appear to be any issue with Plaintiff's standing,[2] we turn to whether the complaint sufficiently asserts an as-applied Second Amendment challenge to § 922(g)(1) under the Third Circuit's decision in Binderup.  Since no district court has yet to fully apply the Binderup

---

[2] Although not raised by either party, the court may *sua sponte* raise the issue of standing.  See Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 405 (3d Cir. 2005).  Here, "[t]aking the complaint's allegations as true, [Plaintiff] has demonstrated that he has a well-founded fear that [§ 922(g)(1)] will be enforced against him, and therefore has shown a concrete and particularized injury in fact causally connected to the government's enforcement of the statute."  Baginski v. Loretta Lynch, No. CV 15-1225 (RC), 2017 WL 318624, at *7 (D.D.C. Jan. 23, 2017); (Doc. 1 at 5).

court's divided opinion, or the standards that a plurality of the court announced, we first endeavor to explain and interpret the court's fractured decision.[3]  We then determine whether Plaintiff's complaint survives Defendants' motion to dismiss.

      C.      <u>As-Applied Second Amendment Challenge</u>

      The Second Amendment protects "the right of the people to keep and bear Arms[.]"  U.S. Const. amend II.  "The Supreme Court has not yet heard an as-applied Second Amendment challenge to a presumptively lawful ban on firearms possession." <u>Binderup</u>, 836 F.3d at 359 (Hardiman, J., concurring).

      In <u>Binderup</u>, the Third Circuit, applying the Supreme Court's opinion in <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), recognized that the Second Amendment, as incorporated against the States in <u>McDonald v. City of Chicago</u>, 561 U.S. 742 (2010), guarantees an individual's right to possess a firearm "unconnected with militia service."  <u>Binderup</u>, 836 F.3d at 343 (quoting <u>Heller</u>, 554 U.S. 582).  The court reiterated both of <u>Heller</u>'s holdings that the Second Amendment protects the right of "law-abiding, responsible citizens to use arms in defense of hearth and home," and that such a right was "not unlimited."  <u>Id.</u> (quoting <u>Heller</u>, 554 U.S. at 634-35, 626).  The court restated <u>Heller</u>'s assurance that "longstanding prohibitions on the possession of firearms by felons" were considered "presumptively lawful regulatory measures" that historically limited the scope of the Second Amendment right.  <u>Id.</u> (quoting <u>Heller</u>, 554 U.S. at 626-27).

      After recognizing these principles, the court in <u>Binderup</u> clarified the framework for bringing as-applied constitutional challenges against firearms regulations,

---

[3] As explained in greater detail below, <u>see</u> <u>infra</u> note 5, the en banc panel in <u>Binderup</u> was notably divided throughout the court's opinion.  <u>See</u> <u>Binderup</u>, 836 F.3d at 339.  Only three judges joined the entirety of the court's opinion, while seven judges joined in an opinion concurring in part, dissenting in part, and dissenting from the court's judgment, and five judges joined in an opinion concurring in part and concurring in the court's judgment.  <u>Id.</u> at 338-39.

which the court had set out in two prior cases.  Id. at 339 (citing United States v.

Marzzarella, 614 F.3d 85, 93-94 (3d Cir. 2010) (adopting framework for evaluating facial

and as-applied Second Amendment challenges to laws prohibiting possession of firearms

with obliterated serial numbers), and United States v. Barton, 633 F.3d 168, 172-73 (3d

Cir. 2011) (finding § 922(g)(1)'s felon-in-possession ban facially constitutional but subject

to as-applied challenges)).  After noting Marzzarella's favorable treatment by nearly every

appeals court, the court in Binderup reaffirmed Marzzarella's "'two-pronged approach to

Second Amendment challenges' to firearms restrictions" like § 922(g)(1)'s felon-in-

possession ban.  Binderup, 836 F.3d at 346 (quoting Marzzarella, 614 F.3d at 89).

      D.      Framework for As-Applied Second Amendment Challenges

            Under the Marzzarella-Binderup framework, there are two-steps in

evaluating an as-applied[4] challenge to a firearm regulation.  At step one, a challenger

must prove "that a presumptively lawful regulation burdens his Second Amendment

rights."  Binderup, 836 F.3d at 346-47.  In other words, the burden is on the challenger of

the regulation to show that "the challenged law imposes a burden on conduct falling within

the scope of the Second Amendment's guarantee."  Id. at 346 (quoting Marzzarella, 614

F.3d at 89).  If the regulation does not impose such a burden, it "must stand" and the

court's inquiry is at an end.  See id.  However, if a challenger succeeds in showing that the

law burdens conduct within the Second Amendment's scope, then courts proceed to

evaluate step two.  See id. at 347.  At step two, "the burden shifts to the Government to

demonstrate that the regulation satisfie[s] some form of heightened scrutiny[.]"  Id.

---

[4] "[A]n as-applied challenge 'does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.'"  Binderup, 836 F.3d at 345 (quoting United States v. Mitchell, 652 F.3d 387, 405 (3d Cir. 2011)).

1.   _Step One: Presumptively Lawful Statute Burdens Right to Bear Arms_

Under step one, to prove that a presumptively lawful regulation burdens conduct protected by the Second Amendment, the challenger of the regulation must "clear two hurdles: he must (1) identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member, and then (2) present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class." Binderup, 836 F.3d at 347 (citing Barton, 633 F.3d at 173-74). Because Binderup was decided at the summary judgment stage, the court did not address the sufficiency of the facts that a challenger was required to allege at step one in order to survive a motion to dismiss. See id. at 340-41. The court did, however, explain that, at summary judgment, "a challenger cannot prevail merely on his say-so," and indicated that the challenger must make a "strong" showing "to rebut the presumptive lawfulness" of a regulation. Id. at 347.

a.       _§ 922(g)(1)'s Ban is Presumptively Lawful_

Following Heller's instruction that "longstanding prohibitions on the possession of firearms by felons" are "presumptively lawful," the court in Binderup found that § 922(g)(1)'s prohibition was presumptively lawful because it extended "to anyone convicted of a crime meeting the traditional definition of a felony." Binderup, 836 F.3d at 347 (quoting Heller, 554 U.S. at 626-27). The court noted that § 922(g)(1) applies to persons convicted of crimes "punishable by imprisonment for a term exceeding one year," and that, "[t]raditionally, 'felons' are people who have been convicted of any crime 'that is punishable by death or imprisonment for more than one year.'" Id. (citations omitted). In Binderup, the court found that the challengers were subject to § 922(g)(1)'s presumptively

lawful ban because they were convicted of offenses punishable by more than one year imprisonment, even though their crimes were classified as misdemeanors by their respective States.  Id. at 348.  Likewise, here, because Plaintiff's complaint asserts that his DUI conviction was punishable by up to five years' imprisonment, (Doc. 1 at 3), he would meet the traditional definition of a felon, even though Pennsylvania law classifies his DUI offense as a misdemeanor.  Plaintiff's complaint sufficiently alleges that he is subject to § 922(g)(1)'s presumptively lawful firearm ban.  See Binderup, 836 F.3d at 348.

>           b.           Traditional Justification for Denying Felons the Right to Arms.

Elaborating on the first hurdle at step one, the court in Binderup discussed the historical justification for "stripping felons" of their Second Amendment rights.  Id.  The court identified the justification, which "dates back to our founding era," as being that some criminal offenders were "'unvirtuous' because they committed serious crimes."  Id. at 349 ("[P]ersons who have committed serious crimes forfeit the right to possess firearms much the way they 'forfeit other civil liberties, including fundamental constitutional rights.'" (quoting Barton, 633 F.3d at 175)).  The court noted that "the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'"  Id. at 348 (quoting United States v. Yancey, 621 F.3d 681, 684-85 (7th Cir. 2010)).  The court acknowledged that "[p]eople who have committed or are likely to commit 'violent offenses'—crimes 'in which violence (actual or attempted) is an element of the offense,'—undoubtedly qualify as 'unvirtuous citizens' who lack Second Amendment rights."  Id. (citations omitted).  The court went further, though, reasoning that the felon dispossession justification extended not "just [to] violent felons," but to all felons, violent or nonviolent.  Id. (citing Heller, 554 U.S. at 626).  The court held that "[t]he category of

'unvirtuous citizens' is thus broader than violent criminals; it covers any person who has committed a *serious criminal offense*, violent or nonviolent." Id. at 348 (emphasis added).

      *c.*              *Distinguishing the Historically Barred Class*

      At the second hurdle of step one, a challenger must "present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class." Id. at 347. Elaborating on how a challenger may distinguish his circumstances, the court in Binderup agreed with its earlier decision in Barton that "a challenger may show that he never lost his Second Amendment rights because he was not convicted of a serious crime." Id. at 349 (citing Barton, 633 F.3d at 174). "[B]eing convicted of a non-serious crime does not demonstrate a lack of 'virtue' that disqualifies an offender from exercising [his Second Amendment] rights." Id.

      The court in Binderup disagreed with its prior decision in Barton that "the passage of time or evidence of rehabilitation will restore the Second Amendment rights of people who committed serious crimes." Id. at 350 (rejecting Barton's insinuation that "a challenger who once lost his Second Amendment rights by committing a serious crime may regain them if his 'crime of conviction is decades-old' and a court finds that he 'poses no continuing threat to society'" (quoting Barton, 633 F.3d at 174)). Reasoning that "[t]here is no historical support for the view that the passage of time or evidence of rehabilitation can restore Second Amendment rights that were forfeited," and that restoration of Second Amendment rights is "a matter of legislative grace[,]" the court in Binderup held: "To the extent Barton holds that people convicted of serious crimes may regain their lost Second Amendment rights after not posing a threat to society for a period of time, it is overruled." Binderup, 836 F.3d at 350.

Consequently, in evaluating Plaintiff's complaint at step one, we do not consider allegations related to rehabilitation or recidivism. See id. at 356. Rather, the "sole focus" in determining "the constitutional sweep of statutes like § 922(g)(1) at step one" is the "seriousness of the purportedly disqualifying offense." Id. at 350. Accordingly, for Plaintiff's complaint to state a claim for an as-applied Second Amendment challenge to the constitutionality of § 922(g)(1) at step one, it must distinguish Plaintiff from felons historically barred from possessing firearms by alleging facts to show that there is a "strong reason" why his 2005 DUI conviction was not a "serious" offense. See id. at 351.

i.       Determining whether a crime is 'serious'

"[T]here are no fixed criteria for determining whether crimes are serious enough to destroy Second Amendment rights." Id. The Binderup court rejected the notion that all crimes subject to § 922(g)(1)'s prohibition should be considered serious because of the crimes' maximum possible punishment. Id. at 350. Rather, the court acknowledged that some State misdemeanors subject to § 922(g)(1), although being punishable by more than two years' imprisonment, "may be 'so tame and technical as to be insufficient to justify the ban'" on firearms possession. Id. (quoting United States v. Torres-Rosario, 658 F.3d 110, 113 (1st Cir. 2011)).   Reasoning that Heller stated that felon-in-possession firearm bans were "presumptively lawful," and that "presumptions are rebuttable," the court indicated that "to determine whether [a plaintiff is] shorn of [his] Second Amendment rights, Heller requires us to consider the maximum possible punishment but not to defer blindly to it." Id. at 350-51 (first quoting Heller, 554 U.S. at 626-27 & n.26).

The Binderup court recognized that "the category of serious crimes changes over time as legislative judgments regarding virtue evolve," and therefore set forth a

seemingly non-exhaustive list of factors for courts to consider in evaluating whether challengers have presented sufficient facts at step one to "distinguish[] their circumstances from persons historically excluded from the right to arms." Id. at 351, 353. The court instructed that, in evaluating an as-applied challenge to the constitutionality of § 922(g)(1), we should consider: (1) whether a state classifies the offense as a misdemeanor or felony; (2) whether an offense involves violent criminal conduct, i.e., that violence (actual or attempted) is an element of the offense; (3) the severity of the sentence imposed on the challenger; and (4) whether there is cross-jurisdictional consensus regarding the seriousness of the disqualifying crime. Id. at 351-52. Although this standard represents the view of only three judges on the Binderup panel,[5] and despite the fact that circuit courts are split on whether the Second Amendment even permits as-applied challenges to § 922(g)(1),[6] we endeavor to apply these factors to the allegations in Plaintiff's complaint.

---

[5] The en banc court in Binderup was divided throughout the court's opinion on many of its holdings. Only seven members of the fifteen-judge panel reaffirmed the two-step framework laid out in Marzzarella for permitting as-applied challenges to § 922(g)(1); those members also agreed that § 922(g)(1) was a presumptively lawful firearm ban, grounded in the historical justification of denying some criminal offenders the right to arms because they committed serious crimes, and that only the seriousness of an offense determines the constitutional sweep of § 922(g)(1). See id. at 345-49. Only three panel members held that § 922(g)(1) implicates non-serious crimes in a potentially unconstitutional manner, and those members set forth the above-mentioned factors for evaluating whether a crime subject to § 922(g)(1) is "serious." See id. at 350-53. We follow the standard set by these panel members because it represents the "'single legal standard' that 'produce[s] results with which a majority of the [court] . . . would agree." Id. at 356 (quoting United States v. Donovan, 661 F.3d 174, 182 (3d Cir. 2011)) (indicating that when "no single rationale explaining the result enjoys the support of a majority of the [c]ourt, its holding 'may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" (quoting Marks v. United States, 430 U.S. 188, 193 (1977))).

[6] See Binderup, 836 F.3d at 382-88 (Fuentes, J., concurring in part and dissenting in part) ("As this survey of cases demonstrates, federal judges face an almost complete absence of guidance from the Supreme Court about the scope of the Second Amendment right. Even so, only four of our sister courts have clearly stated that as-applied challenges to § 922(g)(1) are even permissible. In taking the further step of upholding such a challenge, we stand entirely alone.").

*ii.*            Application to Plaintiff

Plaintiff's complaint first alleges that his 2005 DUI conviction was classified as a misdemeanor and not a felony under Pennsylvania law.  (Doc. 1 at 3).  Specifically, the complaint alleges that Plaintiff was convicted in 2005 of DUI—highest rate of alcohol, second offense, and that Pennsylvania law classified the offense as a first-degree misdemeanor, punishable by up to five years' imprisonment.  (Id. (citing 18 PA. CONS. STAT. § 1104(1))). Based on this allegation, Plaintiff argues that, similar to the challengers in Binderup, his 2005 DUI conviction was not an offense serious enough to prohibit him from possessing a firearm under the Second Amendment.  (Doc. 16 at 9).

Here, the fact that Plaintiff's DUI offense was punishable by up to five years' imprisonment provides some indication that his crime was serious.  However, as the court in Binderup noted, our analysis does not end there, as courts must also consider the label which the State attaches to such a conviction.  See Binderup, 836 F.3d at 340, 351 (finding challenger's conviction for corrupting a minor under Pennsylvania law not to be serious enough to strip away Second Amendment rights despite the offense being punishable by up to five years' imprisonment).  In this case, the complaint's allegation of Plaintiff's DUI offense being classified as a misdemeanor offense under Pennsylvania law is sufficient to survive Defendants' motion to dismiss.  See id at 351 ("[A] state legislature's classification of an offense as a misdemeanor is a powerful expression of its belief that the offense is not serious enough to be disqualifying.").

Moreover, Plaintiff's complaint also alleges that he "is not prohibited under Pennsylvania law from possessing firearms."  (Doc. 1 at 3).  Accordingly, Plaintiff argues that his 2005 DUI conviction does not prohibit him from possessing or purchasing a

firearm in Pennsylvania.  (Doc. 16 at 9-10); see 18 PA. CONS. STAT. § 6105(b) and (c)

(noting DUI as disqualifying offense only when committed on three or more occasions

within five-year period, and, even then, such conviction disqualifies individual only from

transfers or purchases of firearms, not possession).  Indeed, it appears that one

Pennsylvania court has noted that where an individual is convicted of Plaintiff's particular

DUI offense, he would not be prohibited from possessing a firearm under Pennsylvania

law, but rather, the prohibition "would arise solely out of federal law."  See Ilgenfritz v. Pa.

State Police, No. 2092 MDA 2015, 2016 WL 5341287, at *3 (Pa. Super. Ct. July 22, 2016)

(non-precedential).   Given these allegations, we find that Plaintiff has alleged sufficient

facts under this factor[7] to survive Defendants' motion to dismiss.

Second, Plaintiff alleges that he "has never been convicted of any crime of

violence."  (Doc. 1 at 3).  Although "it is possible for non-violent crimes to be serious, the

lack of a violence element is a relevant consideration" to whether a crime is serious so as

to strip away Second Amendment rights.  Binderup, 836 F.3d at 352.   Plaintiff argues

that his 2005 DUI conviction was not a "violent" offense, (Doc. 16 at 10), and submits that

"it would strain credulity to classify DUI as a "violent crime."  (Doc. 10 at 8 n.4).

In support of their motion to dismiss, Defendants posit that Plaintiff's "repeat

DUI offense is not a 'minor' crime" because of "the fact that it was Plaintiff's second

alcohol related driving offense and that his blood alcohol level was 'recorded as .302,

more than three times the legal limit.'"  (Doc. 18 at 7).  Defendants contend that Plaintiff's

---

[7] Because Binderup was decided at the summary judgment stage, the court did not address the sufficiency of the factual allegations necessary to overcome a motion to dismiss on this factor.  See 836 F.3d at 340-41, 351.  A state's classification of an offense seems to be a legal conclusion, and, typically, at this stage, district courts disregard legal conclusions within a Plaintiff's complaint.  See Bruni, 824 F.3d at 360.  Regardless, we have little difficulty finding that Plaintiff has adequately alleged that his DUI conviction was a misdemeanor under Pennsylvania law.

DUI conviction is serious because case law "suggests that it is not uncommon for a person who obtains a blood alcohol content of this level to be rendered unconscious as a result." (Doc. 9 at 18 (citing cases)).

Here, we find that Plaintiff has presented sufficient facts to survive Defendants' motion to dismiss, as he has distinguished his DUI offense from crimes "in which violence (actual or attempted) is an element of the offense." See Binderup, 836 F.3d at 352 (quoting United States v. Skoien, 614 F.3d 638, 642 (7th Cir. 2010) (en banc)).  We emphasize that Defendants' counterarguments rely primarily on facts about Plaintiff's BAC that this court may not accept as true for purposes of deciding this motion. We reiterate that, in deciding a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff to determine whether it and other appropriate documents state a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler, 578 F.3d at 211 (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).  We do not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

At this stage, Plaintiff has adequately alleged that his DUI conviction was not a violent offense.  In support of this allegation, Plaintiff argues that his DUI conviction does not involve "as an element [of the offense], the use or attempted use of force."  (Doc. 10 at 8 n.4); see also Binderup, 836 F.3d at 352; Leocal v. Ashcroft, 543 U.S. 1, 11 (2004) (holding DUI conviction not "crime of violence" under 18 U.S.C. § 16 because "[i]n no 'ordinary or natural' sense can it be said that a person risks having to 'use' physical force against another person in the course of operating a vehicle while intoxicated and causing

injury"); Begay v. United States, 553 U.S. 137, 146-48 (2008) (holding repeat DUI

conviction, although exhibiting "a degree of callousness toward risk," was not a "violent

felony" under the Armed Career Criminal Act (ACCA)).

This is not to say that DUI offenses are not, or cannot be, dangerous.  See

Begay, 553 U.S. at 147 (noting that although DUI was not a "violent felony" under the

ACCA, such a finding "does not minimize the seriousness of the risks attached to driving

under the influence" and is not meant to "deny that an individual with a criminal history of

DUI might later pull the trigger of a gun").  Indeed, Plaintiff's complaint alleges that his DUI

conviction required a blood alcohol content of .16% or greater.  (Doc. 1 at 3); see also 75

PA. CONS. STAT. § 3802(c).  Additional facts may provide greater insight into the violent or

nonviolent nature of the offense; however, the court's Binderup decision may also limit this

court's ability to consider such facts.[8]  At this stage, we simply find that Plaintiff's

complaint states a plausible claim that the elements of his DUI conviction did not involve

"violent criminal conduct."  See Binderup, 836 F.3d at 352.

Third, in evaluating the seriousness of Plaintiff's DUI conviction, we consider

the severity of the sentence imposed.  See id.  In sustaining the challengers' as-applied

challenges to § 922(g)(1) in Binderup, the court noted that they "received a minor

sentence by any measure" for their convictions.  Id.  The court explained that "severe

punishments are typically reserved for serious crimes," and that "punishments are

---

[8] Whether an offense is "violent," i.e., involves "the use or attempted use of force as an element,"
under Binderup appears to be a legal question on which this court may not be able to consider
additional facts.  See Binderup, 836 F.3d at 352.  In Binderup, the court stated that, in evaluating this
factor, a court "look[s] only to a crime's elements rather than to the way it actually was committed,"
but then went on to note the district court's finding that the record did not suggest that the challenger
"used any violence, force, or threat of force to initiate or maintain the sexual relationship with his
seventeen-year-old employee."  Id. at n.4.  At this stage, we need not resolve what, if any, facts may
be considered in determining whether Plaintiff's DUI conviction was "violent."

selected by judges who have firsthand knowledge of the facts and circumstances of the cases and who likely have the benefit of pre-sentence reports prepared by trained professionals." Id. Applying this standard, the challengers in Binderup respectively received probation and a suspended sentence, and, therefore, the court held that, because neither received "a single day of jail time," such punishments "reflect[ed] the sentencing judges' assessment of how minor the [offenses] were." Id.

Here, Plaintiff's complaint and the docket sheets appended to Defendants' motion reflect that Plaintiff received a sentence of three to six months' confinement, sixty months' Intermediate Punishment, and 500 hours of community service. Plaintiff argues that although he was confined for several months, the bulk of his sentence was Intermediate Punishment (Docs. 10 at 10, 16 at 10), which is a statutorily authorized sentencing alternative that "lie[s] between probation and incarceration with respect to sentencing severity." Commonwealth v. Jurczak, 86 A.3d 265, 267 (Pa. Super. Ct. 2014). Such a punishment "restrict[s] an offender['s] liberty but fall[s] short of traditional incarceration," Commonwealth v. Wegley, 829 A.2d 1148, 1152 (Pa. 2003), and is a "more appropriate form of punishment/treatment for certain types of non-violent offenders," Jurczak, 86 A.3d at 267. Based on these allegations, and despite some difficulty applying this standard,[9] we find that although the sentence that Plaintiff received is alleged to be

---

[9] The previous Binderup considerations of whether Plaintiff's DUI offense was a misdemeanor or a violent offense appear to be primarily legal determinations. An assessment of the severity of a sentence, however, is fact-dependent, and the Binderup court gave little guidance on how to apply this standard. We perceive potential issues applying this standard. Binderup did not answer *how much* imprisonment a challenger must receive for this factor to weigh against his as-applied challenge, and did not resolve how to apply this factor when considering States' different sentencing schemes. It also seems that courts could arrive at differing conclusions as to whether challengers may maintain an as-applied attack on § 922(g)(1), despite being convicted of the same offense, solely because of a sentencing disparity. Finally, the court also did not establish a baseline for evaluating a sentence's severity. However, we need not resolve these issues at this stage.

more severe than the challengers in <u>Binderup</u>, he has alleged enough facts for this third factor to show that his sentence could plausibly he considered relatively minor.

Finally, we evaluate whether there is "cross-jurisdictional consensus regarding the seriousness of" Plaintiff's DUI offense.  <u>See</u> <u>Binderup</u>, 836 F.3d at 352. Where challengers to a firearm regulation are "unable to show that so many states consider their crimes to be non-serious, it would be difficult for them to carry their burden at step one."  <u>Id.</u> at 353.

In this case, Plaintiff's complaint, filed before <u>Binderup</u>, does not make any averments regarding this factor.  However, in his briefing, Plaintiff cites to the DUI laws of the States bordering Pennsylvania and argues that "while there is cross-jurisdictional consensus that driving under the influence is a crime, there is [also] a cross-jurisdictional consensus . . . that [Plaintiff's] crime is not 'serious.'" (Doc. 16 at 10).  Defendants, again relying on the allegation that Plaintiff's BAC was .302% as part of his 2005 DUI conviction, counter that the severity of Plaintiff's DUI "evince[s] a serious lack of concern for public safety." (Doc. 9 at 18-19).  Despite our difficulty assessing the sentencing nuances of different States' DUI laws, we find that Plaintiff has nonetheless alleged sufficient facts to "adequately distinguish[] his circumstances from those of persons historically excluded from Second Amendment protections." <u>Binderup</u>, 836 F.3d at 348.

As both parties note, there is certainly cross-jurisdictional consensus as to the fact that all States have laws prohibiting DUI, with the uniform legal limit of BAC being .08%.[10]  However, the court in <u>Binderup</u> indicated that courts should consider not only if there is consensus as to *whether* States punish the particular disqualifying offense, but

---

[10] <u>See</u> <u>National Survey of State Laws: Part II: Criminal Laws: Section 8: Drunk Driving</u>, 127 (Richard A. Leiter ed., 7th ed. 2015).

also as to *how severely* States punish the offense—*i.e.*, whether States punish it so

severely as for it to be disqualifying under § 922(g)(1).  See Binderup, 836 F.3d at 352-53

(noting that some States punish offense of unlicensed carrying of concealed weapon as

serious crime, while other States "prescribe a maximum sentence that does not meet the

threshold of a traditional felony," and other States do not punish such an offense at all).

Here, a review of States' DUI laws reveals a disparity not only in how States

classify the offense (misdemeanor or felony), but also in how States punish the offense.

The punishment appears to depend on several factors, including, *inter alia*: the number

and frequency of prior offenses; the severity of BAC; the age and occupation of the

offender (*i.e.*, whether the offender is a commercial or bus driver); whether a minor was in

the vehicle; and whether the offense resulted in harm to another.[11]  Given the complaint's

broad averment that § 922(g)(1) is unconstitutional as applied to Plaintiff because of "the

nature" of his DUI conviction and Plaintiff's "unique personal circumstances," (Doc. 1 at 5-

6), we cannot say that Plaintiff has not pled sufficient facts to support this factor;

moreover, the court's Binderup decision certainly does not require a plaintiff at this stage

to allege facts with regard to each of the considerations regarding an offense's

seriousness. Therefore, upon review of the factors set forth in Binderup, we find that

Plaintiff has sufficiently alleged that his 2005 DUI conviction is not a serious crime, and

has stated a plausible as-applied challenge to § 922(g)(1) under the Second Amendment.

2.  *Step Two: Application of Intermediate Scrutiny*

We have found that Plaintiff has alleged sufficient facts to support his as-

applied challenge at Marzzarella-Binderup step one.  At step two, the burden shifts to the

Government to demonstrate that § 922(g)(1) satisfies intermediate scrutiny.  Binderup,

---

[11] See supra note 10, at 128-49.

836 F.3d at 353.  Here, we need not evaluate this step because we are deciding Defendants' motion to dismiss and, at step two, the burden is on Defendants to demonstrate a "substantial fit between the continuing disarmament of [Plaintiff] and an important government interest."  Id. at 356.  Accordingly, we neither consider Plaintiff's assertions that he has not committed any other misdemeanor or felony conviction in more than a decade, nor Defendants' arguments that Plaintiff is a recidivist who has been convicted of recent summary offenses.  (Docs. 10 at 8); (Doc. 18 at 1).  Such considerations are more appropriately reserved for disposition on the merits.

*IV.*        *Conclusion*

Because Plaintiff's complaint (Doc. 1) has alleged sufficient facts to maintain an as-applied challenge to the constitutionality of § 922(g)(1) under the Third Circuit's decision in Binderup, we will deny Defendants' motion (Doc. 8) to dismiss.  An appropriate order will issue.


/s/ William W. Caldwell
William W. Caldwell
United States District Judge


Date: February 8, 2017